# Richmond

## Norfolk and Western Railway Company v. Commonwealth of Virginia.

June 12, 1967.

Record No. 6441.

Present, All the Justices.

*John W. Riely (James E. Carr; David R. Goode; Beverly H. Randolph, Jr.; H. Merril Pasco; Peyton, Beverly, Scott & Randolph; Hunton, Williams, Gay, Powell & Gibson,* on brief), for appellant.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for appellee.

CARRICO, J., delivered the opinion of the court.

In this appeal of right from the State Corporation Commission, we are called upon to decide whether the Norfolk and Western Railway Company is entitled to a refund of $1,595,156.75 in franchise taxes alleged to have been erroneously assessed and collected for the year 1965. The Railway applied for the refund under Code, § 58-1122; and the Commission, in its final order, denied the application.

The franchise tax was imposed pursuant to the authority of § 177 of the Constitution which is given statutory effect by Code, § 58-519. The Code section provides that every corporation operating a railroad in this state shall pay an annual state franchise tax equal to two percent of its gross transportation receipts.[1]

The method of ascertaining the amount of the tax is prescribed by § 178 of the Constitution to which statutory effect is given by Code, § 58-520. That Code section reads:

"§ 58-520. *How franchise tax ascertained.*—The franchise tax shall be based upon the gross transportation receipts of such corporation for the year ending December thirty-first preceding, to be ascertained by the State Corporation Commission in the following manner:

"(1) When the road or canal of the corporation lies wholly within this State, the tax shall be based upon the entire gross transportation receipts of such corporation.

"(2) When the road or canal of the corporation lies partly within and partly without this State, or is operated as a part of a line or system extending beyond this State, the tax shall be based upon the gross transportation receipts earned within this State, to be determined as follows:

"By ascertaining the average gross transportation receipts per mile over its whole extent within and without this State and multiplying the result by the number of miles operated within this State; provided, that from the sum so ascertained there may be deducted a reasonable sum because of any excess of value of the terminal facilities or other similar advantages situated in other states over similar facilities or advantages situated in this State."

---

1 By an amendment adopted in 1964, the rate of the franchise tax was reduced, beginning with the calendar year 1966.

Code, § 58-528 provides that the State Corporation Commission shall prepare and furnish forms to railway corporations for reporting the information necessary to ascertain the amount of the franchise tax. Code, §§ 58-526 and 58-527 prescribe what the reports shall contain:

"§ 58-526. *Report of gross transportation receipts.*—Every such corporation shall also report on or before the fifteenth day of April of every year the gross transportation receipts of the railway or canal for the year ending the thirty-first day of December preceding and in all cases the report shall be so made as to give the data on which the same is made. . . ."

"§ 58-527. *When railway or canal only partly in State.*—If such railway or canal is only in part within the Commonwealth, the report shall show what part is within the Commonwealth and what proportion the same bears to the entire length of the road or canal and shall apportion the receipts accordingly."

The forms furnished the railway corporations by the Commission, responsive to the duty imposed upon it by Code, § 58-528, have been in use without significant change since the Commission was organized in 1903. On the forms, a railway corporation reports its transportation revenues broken down into categories and its total gross transportation receipts for the year ending the preceding December 31, its entire length of road, its length of road in Virginia, its gross transportation receipts per mile computed over its entire system, its gross transportation receipts apportioned to and subject to taxation in Virginia, and the amount of tax estimated by the corporation to be due.

[1] From its inception and until this case arose, the Commission had employed a consistent formula for ascertaining the amount of tax to be paid by a railway corporation operating lines partly within and partly without this state. Under that formula, the preceding December 31 was the date used to determine both the gross transportation receipts and the number of miles of line operated by the corporation. The total number of miles of line in the corporation's entire system was divided into the gross transportation receipts to determine the average gross transportation receipts per mile over the entire line. That product was multiplied by the number of miles of line operated in Virginia to secure the gross transportation receipts subject to taxation in Virginia. Finally, the latter figure was multiplied by the rate of tax to produce the amount of tax due.

The Railway is a Virginia corporation which owns and operates a

railroad system partly within and partly without this state. In 1964, the Railway reported to the Commission its gross transportation receipts and the number of miles of line operated, both as of December 31, 1963, and paid a tax computed upon the usual formula.

[2] In June, 1964, the Interstate Commerce Commission authorized the Railway to acquire by merger the New York, Chicago and St. Louis Railroad Company (Nickel Plate Railroad); to lease and to operate the lines of the Wabash Railroad Company and of the Pittsburgh & West Virginia Railway Company; and to acquire by purchase the Sandusky line of the Connecting Railway Company. The Railway commenced operation of the new lines on October 16, 1964.

These acquisitions produced a marked effect upon the relative position of the Virginia portion of the Railway's system to the entire system. Prior to October 16, 1964, the Railway operated 2,743.07 miles of line of which 1,585.03 miles were in Virginia. On and after that date, it operated 7,577.55 miles of line with the Virginia mileage remaining the same.

The acquisition also produced a marked effect upon the amount of the Railway's franchise tax. For 1964, based upon the December 31, 1963, figures for gross transportation receipts and number of miles of line operated, it paid a tax of $3,057,416.67. For 1965, based upon the figures as of December 31, 1964, it reported as due and made payment of a tax of only $1,396, 215.52.

The sharp reduction in the amount of the Railway's franchise tax for 1965 is explained by the fact that while its length of line had increased by December 31, 1964, to 7,577.55 miles over the 1963 figure of 2,743.07 miles, an increase of 176.24 percent, without any change in the Virginia mileage, the total gross transportation receipts as of December 31, 1964, had increased to $333,744,270 over the 1963 figure of $264,559,916, an increase of only 26.15 percent.

Following the filing of the Railway's report for 1965, the Commission recomputed the Railway's tax and assessed as additional tax the amount in controversy here, which the Railway paid under protest. In making the additional assessment, the Commission adopted a new formula.

Under the new formula, the portion of the tax year preceding the Railway's acquisition of new lines was separated from the period following such acquisition. An estimate of the Railway's gross transportation receipts for the period from January 1, 1964, to October

15, 1964, was divided by the number of miles of line operated as of October 15 to secure the average gross transportation receipts per mile over the entire line for that period. That average figure was multiplied by the number of miles of line operated in Virginia as of October 15. The ensuing product was in turn multiplied by the two percent tax rate to produce a partial assessment for the first nine and one-half months of the year.

The Railway's gross transportation receipts for the remaining portion of the year, including the receipts from its newly acquired lines, were then divided by the number of miles of line operated as of December 31, including the number of newly added miles of line. The latter figure was multiplied by the number of miles of line operated in Virginia as of December 31. To that product was applied the two percent tax rate to produce a partial assessment for the remaining two and one-half months of the year. The two partial assessments were then added together to produce the total assessment of $2,991,372.27 which includes the $1,595,156.75 in dispute in this case.

[3] The sole question to be decided is whether the Commission erred in assessing the additional taxes. In deciding that question, the crucial determination to be made is whether the new formula adopted by the Commission for assessing the franchise tax upon the Railway is correct.

It is no answer to the question to say, as the Commonwealth said in oral argument before us, that there is nothing in the applicable statutes to prevent the assessment of taxes in the manner adopted by the Commission. The issue is whether there is in fact any statutory authority for the action of the Commission.

We find no such authority. Code, § 58-526 requires a railroad corporation to report on or before April 15 of every year its gross transportation receipts "for the year ending the thirty-first day of December preceding." Code, § 58-520 provides that the franchise tax assessed against the corporation "shall be based upon the gross transportation receipts of such corporation for the year ending December thirty-first preceding."

[4] These statutes, in language which is clear and unambiguous, say that the assessment of franchise taxes upon railroad corporations shall be made upon one and only one basis—gross transportation receipts for the preceding year determined as of December 31 of that year. And, since the tax is to be fixed by the application of such

receipts to the number of miles of line where the railroad corporation operates both within and without the state, it follows as a matter of logical statutory interpretation that December 31 preceding shall also be employed as the date for determining such mileage.

The statutes before us do not say that a railroad corporation shall make its annual report upon a daily, weekly, or monthly basis or that the assessment of taxes shall be made upon any such basis. There simply is no statutory authority for the computation of an assessment by adding together partial assessments based upon different sets of figures for gross transportation receipts and track mileage attributable to different segments of the year.

The allocation of the Railway's gross transportation receipts and track mileage to different periods of the year is an essential component of the Commission's formula. When that component fails, the whole formula fails, and it necessarily follows that the additional assessment was erroneous.

Accordingly, we reverse the order of the Commission denying the Railway's application for a refund. An order will be entered here adjudging that the Commonwealth pay to the Railway $1,595,156.75, the amount erroneously assessed and collected as additional franchise taxes for the year 1965.

*Reversed and final judgment.*